A. L. Merrill and R. D. Merrill, both of Pocatello, Idaho, and Rainey T. Wells, of Omaha, Neb., for appellant.

T. D. Jones and Ralph H. Jones, both of Pocatello, Idaho, for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

## OMAHA WOODMEN LIFE INS. SOC. v. KRUSSMAN.

### No. 10077.

Circuit Court of Appeals, Ninth Circuit.

Oct. 20, 1942.

Rehearing Denied Dec. 18, 1942.

HANEY, Circuit Judge.

This appeal was taken from a judgment rendered in favor of appellee as beneficiary under a fraternal benefit certificate of insurance issued by appellant on the life of Eric A. Krussman, deceased.

Deceased applied for and was granted membership in appellant and obtained its insurance advantages. The application was dated August 7, 1935, and the certificate was dated September 30, 1935. The certificate required payment of $11.70 before the last day of each month, and made the provisions of appellant's articles of incorporation, constitution, by-laws and laws applicable to the contract. One of the provisions specifies that if any member "fails to make any such payment on or before the last day of the month it shall thereby become delinquent, he shall thereby become suspended, his beneficiary certificate shall be void, the contract between such person and the Society shall thereby completely terminate * * *". Under the provisions, after forfeiture for nonpayment, reinstatement might be had by payment of the "delinquent installment" provided the member was in good health, but if he was not, he had no rights whatever under the certificate.

Several provisions as to waiver were applicable. One provision was that no "officer, employee or agent of the Assoc. has authority to waive any of the conditions" of the certificate or appellant's constitution or its laws. Another provision was that should the certificate become void "acceptance of any payment from or for the member * * * shall not operate as an estoppel or as a waiver of the terms of this contract". Still another provision was to the effect that retention of payments made by a member for purposes of reinstatement should not constitute a waiver of any of the provisions of the contract "until such

time as the Secretary of the Association shall have received actual, not constructive or imputed knowledge that the person was not in fact in good health when he attempted to again become a member".

Practically all the payments made by deceased were made subsequent to the last day of the month. Payments were made by checks all except two of which were made payable to appellant, and were cashed by appellant. Appellant had notice of the delay in the payments but took no action which would disclose to deceased that the contract had been forfeited at any time. On February 25, 1939, appellant sent a refund to deceased stating that appellant was "in position to make another refund to each of our members of over two years' standing, and yours is herewith enclosed". On February 1, 1940, appellant sent another refund to deceased stating: "Our Board of Directors has authorized the payment of a Cash Refund for the year 1939 upon certificates in force for two or more years, and check for yours is herewith enclosed".

Deceased suffered a paralytic stroke on July 22, 1938, and another two years later which resulted in his death on August 2, 1940. From July 22, 1938 to the time of his death, he was totally incapacitated. Appellant declined to pay the death benefits provided in the insurance contract and this action to recover such benefits was then brought by appellee as the named beneficiary. The court below held that appellant at all times treated the contract as continuing in force and by its conduct had waived the right to forfeit the contract. The judgment granted recovery, and this appeal was then taken.

Appellant contends that deceased's failure to pay the payments in time automatically forfeited the policy; that the later payments would reinstate the policy only if deceased had been in good health; that after the first stroke, deceased was not in good health, and, therefore, the insurance was never reinstated after that time; and that there could be no waiver of such provisions because other provisions prohibit waiver.

It is apparent that if the provisions of the contract are strictly applied, recovery is prohibited. The question is whether the provisions should be applied. Many authorities are cited by each party, but only one of them is from Idaho, the law of which state being applicable here. For various rules supported by such cases see 45 C.J. 152, § 123 et seq.

The Idaho case cited is not in point on its facts. It does, however, point to the path we should travel. The court in Rasicot v. Royal Neighbors of America, 18 Idaho 85, 108 P. 1048, 1051, 29 L.R.A.,N.S., 433, 138 Am.St.Rep. 180, stated that there were rules of law and principles of equity which must be applied to the insurer as well as to the insured, and further said (108 P. page 1052) : "The state is vitally interested in the thrift and frugality of its citizens, and in encouraging the citizen in providing for his family and looking to their protection and comfort in the event of his demise. To allow him when acting honestly and from the most laudible motive to be led on under the belief that he is devoting his savings to the purchase of a legacy for his dependent ones, and then, when the beneficiary comes to make demand for that paltry recompense, to tell him that the courts, the final arbiters of his rights, will not listen to the equity of the case, would be doing violence to the principles of fair dealing, and would be likewise contrary to the best interests of the public at large, which we term 'public policy.' * * *"

For nearly five years deceased was led to believe that delay in his payments was not fatal to his purpose. After his death, the insurer refuses to carry out its contract application by asserting a myriad of provisions which attempt to circumvent the legal rules of waiver. The effect of these provisions is that the insurer is attempting to dictate to the courts, in advance, what conduct shall or shall not constitute an estoppel. What constitutes an estoppel is a question for the courts to decide, and the insurer will not be heard to say that the parties have assumed the court's province and duty in that respect. We think unquestionably that appellant should be estopped from asserting the waiver provisions relied on.

Independently of the foregoing, our duty is to decide what the law of Idaho is. In Order of United Commercial Travelers v. Campbell, 9 Cir., 115 F.2d 743, we considered the law of Washington with respect to waiver. Rasicot v. Royal Neighbors of America, supra, 108 P. page 1052, indicates approval of the same rule we held to be applicable in Washington. In order of United Commercial Travelers v. Campbell, supra, 115 F.2d page 745, we stated the rule as follows: "It is the rule that the ex-

istence of a waiver depends upon the effect of the insurer's actions upon the insured, not upon what the insurer intends. If the conduct of the insurer is such as to lead an ordinarily prudent insured person to believe that his protection continues despite failure to comply strictly with the terms of the contract, the insurer is held to have waived his right to assert a forfeiture. * * *"

In that case a similar experience of delays in payments was sufficient to authorize recovery regardless of provisions against waiver of the insurance contract. We believe Idaho would follow the law of Washington on that point, and that,in view of the long course of delays in the payments here by deceased, the trial court could properly conclude that deceased was led ,to believe that his insurance was in force despite delay in the payments, and that therefore appellant had waived strict performance of the provisions.

Since appellant itself accepted the delayed payments, the forfeiture was waived, and the insurance was not forfeited. It is, therefore, not necessary to discuss other questions arising in connection with a consideration of reinstatement.

Affirmed.